■ In the Matter of a REPORT OF THE SEPTEMBER 1976 GRAND JURY NUMBER II.—Appeals (1) from an order of the County Court, Suffolk County, dated November 30, 1976, which, *inter alia,* directed that the report of the September 1976 Grand Jury Number II be sealed and not filed as a public record until December 31, 1976 and (2) as limited by appellant's brief, from so much of a further order of the same court, dated December 30, 1976, as, upon reargument, adhered to the original determination and denied appellant's request that the Grand Jury report be sealed and not become a public record. Appeal from the order dated November 30, 1976 dismissed as academic, without costs or disbursements. That order was superseded by the order granting reargument. Order dated December 30, 1976 reversed insofar as appealed from, on the law, without costs or disbursements, the order dated November 30, 1976 is vacated and it is directed that the report in question be sealed. In September, 1976 a Grand Jury was impaneled to investigate the Town of East Hampton Police Department. One of the results of the investigation was the issuance of a report pursuant to CPL 190.85 (subd 1, par [a]), critical of chief of police. The report concerned the neglect of certain administrative duties mandated by law or regulation. CPL 190.85 provides, *inter alia:* "Grand jury; grand jury reports. 1. The grand jury may submit to the court by which it was impaneled, a report: (a) Concerning misconduct, non-feasance or neglect in public office by a public servant as the basis for a recommendation of removal or disciplinary action; or (b) Stating that after investigation of a public servant it finds no misconduct, non-feasance or neglect in office by him provided that such public servant has requested the submission of such report; or (c) Proposing recommendations for legislative, executive or administrative action in the public interest based upon stated findings." During one of its initial sessions, the Assistant District Attorney instructed the Grand Jury concerning its options if it chose to make a report. Towards the close of the evidentiary hearings, the Assistant District Attorney proposed that a subcommittee be formed to write "some proposed reports" for the Grand Jury to consider, if the panel believed a report should be issued. No instructions were given with this suggestion, even though an individual juror asked the purpose of the report. The Grand Jury voted to form the subcommittee. This subcommittee met with an Assistant District Attorney and wrote only one report. As noted, this report, which contained six charges of misconduct, was critical of the police chief and recommended his dismissal. Given the nature of the report, it is clear that the subcommittee was instructed concerning the law underlying the charges of neglect. Moreover, the report was written

with the admitted participation of the Assistant District Attorney. Writing the report necessitated an evaluation of the evidence within those instructions. This subcommittee meeting was not recorded. The proposed report was thereafter presented to the entire Grand Jury which was reinstructed concerning the alternatives in issuing such a report. It was also instructed for the first time concerning the law underlying only two of the six charges of misconduct contained in the proposed report. The Grand Jury then voted to accept the proposed report. At the next session of the entire panel, the Assistant District Attorney instructed the Grand Jury on one of the two complaints previously charged and one of the four remaining specifications as to which no instructions had been given. The Grand Jury then voted to accept the report in its final form. We find the procedure used in issuing the report to be improper and prejudicial and accordingly, order the report sealed. To safeguard the integrity of the Grand Jury and the police chief's right to due process, the Grand Jury as a whole, prior to the selection of a subcommittee, should have been reinstructed as to its options pursuant to CPL 190.85 (subd 1) and then asked to vote whether it chose to issue a report and if so what kind. If a report was to be issued, it should have then been instructed as to the law underlying all of the charges so that it could determine the substantive aspects of the report. Only then should a subcommittee have been formed to write the report. Titone, J. P., Cohalan, Martuscello and O'Connor, JJ., concur.